UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 1, 2016

------------------------------------------------------------------ X
                                          :

ZIMING SHEN,                                     :
                                                 :
                                Plaintiff,       :                14-cv-7358 (KBF)
                                                 :
                    v.                           :              OPINION & ORDER
                                                 :
THE CITY OF NEW YORK, P.O. EVAN                  :
ARONOWITZ, P.O. SELENA D. HOLMES, P.O.           :
MICHAEL MRAZ, P.O. JOHN SHULTZ,                  :
DANIEL SHAPIRO, and SPENCER BURNET               :
                                                 :
                                Defendants.      :
                                                 :
------------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

        Plaintiff brings this action against four officers of the New York City Police Department ("NYPD"), the City of New York, and two photographers, asserting federal statutory and constitutional claims and state law claims arising from an altercation between plaintiff and the photographers and plaintiff's subsequent arrest in Brooklyn, New York on September 16, 2011.

        The Court notes at the outset that—as is often the case when a plaintiff brings a hodge-podge of claims—the vast majority of plaintiff's case is legally infirm on its face. There are a number of claims that are clearly time-barred, inappropriately pled against the defendants named, or wholly lacking in legal basis. Defendants moved for summary judgment on a number of these bases, and also argue that plaintiff has not raised a triable issue based on the undisputed facts in the record. For the reasons stated below, defendants' motions are GRANTED.

I.    FACTUAL BACKGROUND

The following facts are undisputed unless otherwise specified.  The Court refers to only those facts that are relevant for resolution of this motion.[1]

A.    The Altercation

The events giving rise to this action occurred after plaintiff and his wife exited the federal courthouse on Cadman Plaza East in Brooklyn, New York on September 16, 2011.  Plaintiff and his wife, Joanna Fan, had finished a court appearance related to a federal indictment against them.  (Defs. Shapiro & Burnett's Local R. 56.1 Stmt. of Undisputed Facts ("S/B Defs.' 56.1") ¶ 1; Pl.'s Local R. 56.1 Stmt. of Undisputed Facts ("Pl.'s 56.1") ¶ 1.)  As they exited the courthouse, they encountered a throng of photographers who began to take photographs of them.  (NYPD Officer & City of New York Defendants' Local R. 56.1 Stmt. of Undisputed Facts ("NYPD Defs.' 56.1") ¶ 12; S/B Defs.' 56.1 ¶¶ 1-2; Pl.'s 56.1 ¶ 1.)  Defendants allege that plaintiff kicked and yelled at the photographers.  (NYPD Defs.' 56.1 ¶ 14; S/B Defs.' 56.1 ¶ 2.)  Plaintiff does not contest that he yelled at the photographers and "made certain gestures" towards them, but states that he "did

---

[1]    Local Rule 56.1 provides that "papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Plaintiff did not submit a list of counterstatements to defendants' Local Rule 56.1 statements of undisputed fact;  however, he did submit a document containing statements that he believes to be undisputed.  Although plaintiff's submission is not formally compliant with Local Rule 56.1, the Court nevertheless has reviewed plaintiff's submission for statements that may dispute defendants' submissions and are supported by record evidence in order to determine the facts which are uncontroverted or are not in genuine dispute.  See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., 258 F.3d 62, 74 (2d Cir. 2001).  The Court also notes that plaintiff's Local Rule 56.1 statement exhibits were filed four days late.

not kick or punch anyone directly and made no physical contact" with the photographers when he came out of the Courthouse.  (Pl.'s 56.1 ¶¶ 2-3.)  Defendants Daniel Shapiro, a freelance photographer, and Spencer Burnett, a photographer for the New York Post, were present.  (S/B Defs.' 56.1 ¶ 2.)

Plaintiff proceeded to run away from the courthouse.  (NYPD Defs.' 56.1 ¶ 15; Pl.'s 56.1 ¶ 5.)  As plaintiff ran, defendant Shapiro was positioned closely beside him.  (NYPD Defs.' 56.1 ¶ 16; Pl.'s 56.1 ¶¶ 5-6.)  Plaintiff's right arm became entangled in Shapiro's camera strap. (NYPD Defs.' 56.1 ¶ 17; Pl.'s 56.1 ¶¶ 6-7.)  Plaintiff asserts that Shapiro then pulled on and twisted the camera cord, causing plaintiff pain and discomfort.  (Pl.'s 56.1 ¶ 6.)  Plaintiff also asserts that Shapiro struck him in the body while attempting to retrieve the camera and that Shapiro cursed and used a racial epithet against him.  (Pl.'s 56.1 ¶ 6.)  Plaintiff's wife then assisted in untying the camera strap from plaintiff's arm.  (NYPD Defs.' 56.1 ¶ 18; Pl.'s 56.1 ¶ 9.)

Plaintiff then walked towards the Brooklyn Bridge on Tillary Street. (NYPD Defs.' 56.1 ¶ 19; Pl.'s 56.1 ¶ 9.)  His wife had walked in a different direction.  (Pl.'s 56.1 ¶ 9.)  While walking, plaintiff noticed that Shapiro was following him and taking photographs of him.  (NYPD Defs.' 56.1 ¶ 20; Pl.'s 56.1 ¶ 10.)  Plaintiff turned around and saw Shapiro a "couple of inches" behind him.  (NYPD Defs.' 56.1 ¶ 22; Pl.'s 56.1 ¶ 10.)

An altercation ensued.  At one point, plaintiff retrieved two pieces of cardboard from in front of a supermarket named Concord Market.  (NYPD Defs.'

3

56.1 ¶ 23; Pl.'s 56.1 ¶ 10.)  Defendants claim that plaintiff threw the cardboard pieces at Shapiro.  (NYPD Defs.' 56.1 ¶¶ 24-25.)  Plaintiff instead claims that he was using the cardboard to shield himself and "threw [the cardboard] away."  (Pl.'s 56.1 ¶ 11.)  There is no dispute that the cardboard did not in fact hit Shapiro.  (NYPD Defs.' 56.1 ¶ 24; Pl.'s 56.1 ¶ 11.)

According to plaintiff, Shapiro began to "use a camera to hit me first."  (Pl.'s Dep. Tr., Sohn Decl. Ex. E, at 96.)[2]  Plaintiff alleges that he then tried to defend himself.  (Id. at 97.)  Shapiro alleges that plaintiff punched him in the nose, although it is not clear at what time this occurred.  (S/B Defs.' 56.1 ¶ 6.)  Plaintiff acknowledges that Shapiro sustained a bloody nose sometime after he left the front of the courthouse, but asserts that he never punched Shapiro.  (Pl.'s 56.1 ¶ 8.)

At some point, Shapiro pulled plaintiff to the ground.  (NYPD Defs.' 56.1 ¶ 26; Pl.'s 56.1 ¶ 12.)  It is undisputed that Shapiro intended to bring plaintiff to the ground, but that in so doing, Shapiro "lost his balance and he [fell] over [plaintiff]." (Pl.'s Dep. Tr. 97 ("he tried to pull me down, throw me on down to the ground"); see also Shapiro Dep. Tr., Dempsey Decl. Ex. I, at 89 ("I shoved him down, we both went down"); NYPD Defs.' 56.1 ¶ 26; Pl.'s 56.1 ¶ 21.)  Plaintiff contends that when Shapiro fell on top of him, he injured plaintiff's arm or shoulder.  (NYPD Defs.' 56.1 ¶ 27; Pl.'s 56.1 ¶¶ 12-13.)  Plaintiff also asserts that Shapiro kneed him several times and that he then lost consciousness.  (Pl.'s 56.1 ¶ 13.)  Plaintiff alleges that at

---

[2]     Shapiro testified in his deposition that he did not remember whether he struck plaintiff with his camera.  (Shapiro Dep. Tr., Dempsey Decl. Ex. I, at 94.)

4

some point during the encounter, Shapiro's camera swung around and hit plaintiff's body, causing swelling, bruising, and bleeding.  (Pl.'s 56.1 ¶ 12.)[3]

Shapiro called 911 and reported that he had been assaulted.  (NYPD Defs.' 56.1 ¶ 28; Pl.'s 56.1 ¶ 12.)  At some point, Shapiro called 911 a second time.  (Pl.'s 56.1 ¶ 20.)

B.    The Arrest

A bystander approached defendant Officer Mraz, who was on patrol nearby, to inform him that two men were having an argument down the street.  (NYPD Defs.' 56.1 ¶ 32.)  Officer Mraz approached the intersection where plaintiff and Shapiro were positioned.  (NYPD Defs.' 56.1 ¶ 32.)  He was the first officer to arrive at the scene. (NYPD Defs.' 56.1 ¶ 33; Pl.'s 56.1 ¶ 17.)  He observed plaintiff on the ground and Shapiro bleeding from the nose. (NYPD Defs.' 56.1 ¶ 34-35; Pl.'s 56.1 ¶ 16.)  Shapiro identified himself via his press badge and told Officer Mraz that plaintiff had assaulted him.  Shapiro also showed the officer his damaged camera. (NYPD Defs.' 56.1 ¶ 37; S/B Defs.' 56.1 ¶ 8; Pl.'s 56.1 ¶ 17.)  Officer Mraz then attempted to speak to plaintiff, but could not understand him because of a language barrier.  (Pl.'s 56.1 ¶ 17.)

At some point, another police vehicle arrived at the scene.  (NYPD Defs.' 56.1 ¶ 38.)  Shapiro repeated his allegation that he had been assaulted while working, this time to Officer Aronowitz.  (NYPD Defs.' 56.1 ¶ 38; S/B Defs.' 56.1 ¶ 8; Pl.'s 56.1

---

[3]    The parties' Rule 56.1 statements do not address where Burnett was during this altercation. There is no suggestion that he participated in the physical interchange between plaintiff and Shapiro.

¶ 19.)  Plaintiff was also able to communicate with Officer Aronowitz and stated that his shoulder was injured and that he was the victim.  (Pl.'s 56.1 ¶¶ 19, 22.) Plaintiff does not assert that he made any other specific statements to the police about what had occurred.

Plaintiff was then arrested.  Sergeant Muia, a patrol supervisor, authorized the arrest.  (Pl.'s 56.1 ¶ 20.)  Plaintiff asserts that two eyewitnesses, Elissa Krebs and Zakir Hossain were also on the scene.  Krebs, who lived nearby and observed Shapiro and Shen on the street in front of Concord Market, stated in a later affidavit that she believed Shapiro was the initial aggressor and that she never saw Shen hitting Shapiro in the face.  (Pl.'s 56.1 ¶ 14.)[4]  Krebs stated that she spoke to a police officer about her belief that they arrested the wrong man, and the officer asked for her name and contact information but did not release plaintiff from arrest.  (Decl. of Joseph Cacciato ("Cacciato Decl.") Ex. 2, Krebs Dep. Tr. 56-59.)

Hossain, who worked at Concord Market, was also a witness.  He did not speak to the officers when they arrived at the scene.  (Pl.'s 56.1 ¶ 15; Cacciato Ex. 4, Hossain Dep. Tr. 29.)  He also stated that he went back inside the market after plaintiff was arrested.  (Hossain Dep. Tr. 58.)

At the time of plaintiff's arrest, the officers understood that his right arm was injured.  (NYPD Defs.' 56.1 ¶ 40; Pl.'s 56.1 ¶¶ 19-21.)  Although plaintiff asserts

---

[4]      The Court notes that Krebs testified in her deposition that while Shapiro had verbally taunted plaintiff, plaintiff pushed Shapiro before Shapiro swung at plaintiff; she also testified that she did not see the swing land on plaintiff's body.  (Krebs Dep. Tr. 34-37; 44-45.)  She also testified that plaintiff kicked Shapiro about fifteen times.  (Id. at 48-49.)

that he was lifted off the ground by an officer by his right arm, photographs of the arrest shows an officer pulling plaintiff up by his left arm.  (Pl.'s 56.1 ¶ 22; Cacciato Decl. Ex. 12, at 4-5.)[5]  Plaintiff was handcuffed from the back with two sets of handcuffs attached to each other.  (NYPD Defs.' 56.1 ¶ 41; Decl. of Elise Fudim, Ex. V.)[6]  The two handcuffs linked together extended about two feet long.  (NYPD Defs.' 56.1 ¶ 42.)  Plaintiff alleges that he told the officers after he was arrested that his arm hurt;  there is no evidence, however, that plaintiff verbally attributed the pain to the double-linked handcuffs or asked the officers to remove the cuffs.  (Pl.'s 56.1 ¶ 21-22.)

      C.    <u>Hospital Visit</u>

Officer Nunez, who is not a defendant in this action, escorted plaintiff to the hospital from the scene of the arrest.  (NYPD Defs.' 56.1 ¶ 50; Pl.'s 56.1 ¶ 23.)  After arriving at the hospital, Officer Nunez removed plaintiff's handcuffs when he was triaged.  (NYPD Defs.' 56.1 ¶ 51.)  Plaintiff was then treated for his injuries.  (Pl.'s 56.1 ¶ 23.)  Plaintiff was not handcuffed again until he was discharged, at which

---

[5]    It is not clear based on the photograph itself who the officer was.  However, Sergeant Muia testified that he was the one who helped plaintiff up from the ground and was present when plaintiff was handcuffed.  (Sohn Decl. Ex. P, Muia Dep. Tr. at 32-36.)  It is also unclear who handcuffed plaintiff, as there is no record evidence as to this.  (<u>See</u> Pl.'s 56.1 Stmt Ex. 6, Mraz Dep. Tr., at 44-45 (testifying that he was not the arresting officer and that when he "turned around," plaintiff was "already in handcuffs," and that he did not know who put plaintiff in handcuffs)).

[6]    Plaintiff also asserts that he was lifted by both arms into an ambulance by Officer Mraz and an Officer Patrick, who is not a party in this case.  (Pl.'s 56.1 ¶ 23.)  However, plaintiff's assertion in his 56.1 Statement cites two deposition transcript pages from Officer Mraz and Officer Nunez's depositions that do not contain any testimony regarding grabbing plaintiff by both his arms to be lifted into the vehicle.  (<u>See</u> Cacciato Decl. Ex. 6, Mraz Dep. Tr. 43; Cacciato Decl. Ex. 8, Nunez Dep. Tr. 29.)

point Nunez handcuffed plaintiff's uninjured left arm to plaintiff's belt loop.  (NYPD Defs.' 56.1 ¶¶ 52-54.)[7]  At some point during that time, plaintiff's wife arrived at the hospital to retrieve his belongings and took photographs of him.  (Pl.s' 56.1 ¶ 23.)

### D.   Events at the NYPD Precinct

After treatment, plaintiff was taken to the police precinct.  (NYPD Defs.' 56.1 ¶ 55; Pl.'s 56.1 ¶ 26.)  After he arrived at the precinct, plaintiff stated that he was hungry and was given milk and bread.  (NYPD Defs.' 56.1 ¶ 55; Pl.'s 56.1 ¶ 26.)  Later, plaintiff told an unidentified male police officer at the precinct that he wanted food, specifically sweets.  (NYPD Defs.' 56.1 ¶¶ 60, 62; Pl.'s 56.1 ¶ 26.)  The officer stated that he had some leftover cake, and plaintiff decided to eat it.  (NYPD Defs.' 56.1 ¶¶ 60, 64.)  At the time, plaintiff had low blood sugar.  (NYPD Defs.' 56.1 ¶ 57.)  However, plaintiff has also had diabetes for about 20 years.  (NYPD Defs.' 56.1 ¶ 56; Pl.'s 56.1 ¶ 26.)  He knew that if he ate cake, his blood sugar levels could rise to dangerous levels.  (NYPD Defs.' 56.1 ¶ 63.)  Nevertheless, plaintiff chose to eat the cake.  (NYPD Defs.' 56.1 ¶ 63-64.)  After eating the cake, plaintiff felt better. (NYPD Defs.' 56.1 ¶ 65.)

Two or three hours later, plaintiff began feeling dizzy.  (NYPD Defs.' 56.1 ¶ 66.)  He requested and received permission to call his wife to bring him insulin and a coat.  (NYPD Defs.' 56.1 ¶ 67; Pl.'s 56.1 ¶ 26.)  Plaintiff's wife arrived at the

---

[7]   Plaintiff asserts that an officer had stated at the hospital that he wanted to rear handcuff plaintiff, but was told by a physician not to.  Plaintiff asserts that the officer required the physician to sign a form with the no-rear-handcuff advice, and that the physician signed it.  At no point does plaintiff allege that the officer actually attempted to rear handcuff him.  (Pl.'s 56.1 ¶ 23.)

precinct with a coat, a needle, and bottle of insulin, which she left with an officer. (NYPD Defs.' 56.1 ¶ 68; Pl.'s 56.1 ¶ 26.)

Next, an unidentified supervisor at the precinct[8] advised the officer that the insulin was not allowed, as only medical professionals are allowed to administer insulin to arrestees. (NYPD Defs.' 56.1 ¶¶ 69-70; Pl.'s 56.1 ¶ 26.) Plaintiff was also not permitted to have the coat. (Pl.'s 56.1 ¶ 26.) Plaintiff advised an officer that he needed to get treatment for his high blood sugar. (NYPD Defs.' 56.1 ¶ 72.) At the time, the practice of the precinct was to call for an ambulance. (NYPD Defs.' 56.1 ¶ 71.)[9]

Officer Shultz then escorted plaintiff to the hospital to be treated. (NYPD Defs.' 56.1 ¶ 73.)[10] He again only handcuffed plaintiff's left, uninjured arm, but the other side of the cuff was not attached to anything. (NYPD Defs.' 56.1 ¶¶ 74-76.) Upon arrival at the hospital, Officer Shultz cuffed the other end of the handcuff to the hospital bed, leaving the injured arm free. (NYPD Defs.' 56.1 ¶¶ 77-78.) Plaintiff alleges that he complained of tightness in his left wrist and in his legs, and Officer Shultz loosened the cuff on the wrist. (Pl.'s 56.1 ¶ 27.) He also alleges that

---

[8]      There is no record evidence as to the identity of this supervisor.

[9]      Plaintiff alleges that at the precinct, the arm sling that had been provided to him at the first hospital visit had been removed and his injured right arm rested in his shirt; he acknowledges, however, that he does not know how long his arm was out of the sling. (Pl.'s 56.1 ¶ 27.)

[10]     Plaintiff was brought to the hospital at approximately 4:49 a.m. on September 17, 2011. (NYPD Defs.' 56.1 ¶ 73.) Officer Shultz remained with plaintiff at the hospital for several hours, until approximately 8:20 a.m. (NYPD Defs.' 56.1 ¶ 79.)

he sustained injuries to his left wrist or legs as a result of the cuffing.  (Pl.'s 56.1 ¶ 28.)[11]

E.    Subsequent Criminal Proceedings

Plaintiff was released from custody on September 17, 2011 after posting bail. (S/B Defs.' 56.1 ¶ 11.)  After the incident, Shapiro was interviewed by law enforcement.  (NYPD Defs.' 56.1 ¶¶ 43-46, 81-83.)  Officer Aronowitz photographed Shapiro's face and damaged camera lens.  (NYPD Defs.' 56.1 ¶ 47.)  Based on Shapiro's statements, the arrest report, which was signed by Officer Aronowitz, stated:

> AT TPO C/V [complainant / victim] states that while photographing the above perp at the above location the perp charged at the victim punching and kicking him resulting in a bloody nose.  C/V's camera was also damaged by the perp by the perp smacking the camera out of his hands to the ground.  Camera is valued at $16,000 USC.

(NYPD Defs.' 56.1 ¶¶ 48-49; Decl. of Liza Sohn, Ex. I.)  Shapiro also spoke with a prosecutor in the King's County District Attorney's Office, explaining that plaintiff had punched and kicked him.  (NYPD Defs.' 56.1 ¶¶ 81-83.)  The District Attorney's Office also interviewed Burnett.  He stated that plaintiff had kicked and punched towards his direction while outside the courthouse.  (NYPD Defs.' 56.1 ¶¶ 84-85.)

A representative of the District Attorney's Office filed a criminal complaint against plaintiff for the assault of Shapiro and Burnett.  (S/B Defs.' 56.1 ¶ 12.)  He was charged with Assault in the Third Degree and arraigned on September 17,

---

[11]    Plaintiff alleges that his injuries were worsened by the tight cuffing, but it is undisputed that his right arm was not affected when he was transported to the hospital a second time.  (Pl.'s 56.1 ¶¶ 27-28.)

2011.  (S/B Defs.' 56.1 ¶ 10.)  Later, in December 2011 and February 2012, Shapiro and Burnett signed documents in support of the investigation against plaintiff.  (S/B Defs.' 56.1 ¶ 12.)  The charges were dismissed in February 2014.  (S/B Defs.' 56.1 ¶ 13.)

  F. <u>Plaintiff's Allegations and Procedural History</u>

Plaintiff filed a notice of claim against the NYPD officers on April 11, 2014.  (Sohn Decl. Ex. A.)  Plaintiff first brought this action on September 11, 2014.  (ECF No. 1.)  Plaintiff amended his Complaint on December 5, 2014 and again on May 15, 2015.  (ECF Nos. 4, 32.)  In his Second Amended Complaint ("SAC"), plaintiff brings the following claims:

- Federal claims against Shapiro and Burnett:

  - Count I, for violation of equal protection of and access to law pursuant to 42 U.S.C. § 1981;

  - Count XIV, for violation of First and Fourteenth Amendment rights to access to courts; and

  - Count XV, for conspiracy with racial animus, pursuant to 42 U.S.C. § 1985.[12]

- State law claims against Shapiro and Burnett:

  - Count IV, for negligent or intentional infliction of emotional distress ("NIED" or "IIED");

  - Count VII, for malicious prosecution;

  - Count VIII, for abuse of process;

  - Count IX, for prima facie tort; and

  - Count XXI, for making "false and injurious statements."

---

[12] This claim is asserted against only Shapiro and a "John Doe" defendant.

- State law claims against Shapiro only:

    o Count II, for assault and battery;

    o Count III, for false imprisonment;

    o Count V, for negligent assault; and

    o Count VI, for negligence.

- Federal claims against the City of New York and the NYPD officer defendants:

    o Count X, for violation of equal protection and access to law pursuant to 42 U.S.C. § 1981;

    o Count XI, for "Civil Rights Violations" of Constitutional Amendments I, IV, V, and XIV;

    o Count XII, for excessive force;

    o Count XIII, for failure to "properly care for" plaintiff; and

    o Count XIV, for violation of First and Fourteenth Amendment access to courts pursuant to 42 U.S.C. § 1983.

- State law claims against the City of New York and the NYPD officer defendants:

    o Count VIII, for abuse of process;

    o Count IX, for a prima facie tort;

    o Count XVII, for malicious prosecution;

    o Count XVIII, for false imprisonment and arrest;

    o Count XIX, for negligent or intentional infliction of emotional distress;

    o Count XX, for negligence; and

    o Count XXI, for making "false and injurious statements."[13]

---

[13]    This claim is asserted against all defendants, except "John Doe 2."

- State claims against the City of New York only:

  o Count XVI, for failure to properly hire, train, and supervise.

Defendants moved for summary judgment on each of the above claims.

## II.   LEGAL FRAMEWORK

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party does not bear the ultimate burden on a particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor at trial.  Id. at 322-23.

In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).  Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial.  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal citations

13

omitted).  In addition, "[o]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."  <u>Porter v. Quarantillo</u>, 722 F.3d 94, 97 (2d Cir. 2013) (internal quotation marks and citation omitted).

Only disputes relating to material facts—<u>i.e.</u>, "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>see also</u> <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  The Court should not accept evidence presented by the nonmoving party that is so "blatantly contradicted by the record . . . that no reasonable jury could believe it."  <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007); <u>see also</u> <u>Zellner v. Summerlin</u>, 494 F.3d 344, 371 (2d Cir. 2007) ("Incontrovertible evidence relied on by the moving party . . . should be credited by the court on [a summary judgment] motion if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party.").

III.  DISCUSSION

The Court addresses several preliminary issues before addressing the substance of plaintiff's claims.

First, the Court notes that plaintiff does not oppose several of defendants' bases for summary judgment, including on statute of limitation grounds for most of the state law claims and a patent inability to meet basic elements in several other

14

claims.  Plaintiff only opposes summary judgment on the following 7 claims out of 21 originally pled.

- Against NYPD and City defendants, Counts XII, XIII, XVIII, and XVII:  1) excessive force, 2) inadequate medical care, 3) false arrest, and 4) malicious prosecution;

- Against the City only, Count XVI: 5) failure to properly hire, train, and supervise; and

- Against Shapiro only, Counts VII and VI: 6) malicious prosecution and 7) negligence.

Therefore, the Court dismisses the remaining claims as unopposed: [14]

- All claims against Burnett;

- Counts I, X, XI, XIV, & XV:  federal claims under 42 U.S.C. § 1981 and 1985, claims regarding access to courts, and generalized "civil rights violations";

- Against Shapiro, Counts II, III, IV, and V: state law tort claims of assault and battery, false imprisonment, NIED/ IIED, and negligent assault;

- Against NYPD and City defendants, Counts XIX and XX: NIED/IIED and negligence;

- Against all defendants, Counts VIII, IX, and XXI:  abuse of process, state law claims of prima facie tort, and false and injurious statements.

---

[14]    Plaintiff had indicated that he planned to dismiss many of these claims, but nevertheless did not actually do so.  (See Pl.'s Feb. 29, 2016 Ltr., ECF No. 69, at 2.)

Second, the Court notes that plaintiff has asserted no facts supporting any involvement by defendant Sergeant Selena Holmes. (NYPD Defs.' 56.1 ¶¶ 86-87.) Plaintiff's Rule 56.1 statement is devoid of any reference to Sergeant Holmes. Because plaintiff has failed to state a claim against her or point to any personal involvement by her as to the events in this lawsuit, she is hereby dismissed as a defendant.

Third, while plaintiff has asserted claims against "John Doe 1" and "John Doe 2," the time to substitute parties has long passed. These defendants are therefore also dismissed from this action.

A.    Federal Constitutional Claims

Plaintiff asserts five federal claims against the NYPD and City defendants. However, he only opposes only two such claims on summary judgment: 1) inadequate medical care and 2) excessive force.

1.    Inadequate Medical Care Claim

Plaintiff alleges that "New York City, Police Officers, and Jon Doe 2" failed to "provide for plaintiff's medical needs and in fact caused his medical condition to worsen." He asserts that Officers Aronowitz, Mraz, Nunez, and Shultz are liable because they denied him access to insulin after he entered "diabetic shock" while held at the precinct. This claim fails because plaintiff has failed to plead or offer any proof of direct involvement by any of the named officers.

First, Officer Nunez is not a defendant in this action. Second, plaintiff has proffered no evidence that any of the named officers were personally involved for this claim, which is required under § 1983.

> A defendant may be personally involved in a constitutional deprivation within the meaning of 42 U.S.C. § 1983 in several ways. The defendant may have directly participated in the infraction. A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong. A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue. Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event.

Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986). Plaintiff has not proffered facts to support any of these theories of liability. For example, he has never pled or provided any evidence that any defendants in this action were responsible for plaintiff at the precinct when the diabetes episode occurred, or made any decisions to not allow plaintiff access to the needle and insulin his wife brought to the precinct. Although Officer Shultz took plaintiff to the hospital to be treated for his diabetes, there is no record evidence that he was present at the precinct or had any interaction with plaintiff before that point. Plaintiff has also never pled or proffered any evidence that any of the defendant officers had a supervisory role as to the denial of plaintiff's request for insulin. For these reasons, this claim is dismissed.

2. **Excessive Force Claim**

Plaintiff's claim for excessive force is based on his allegation that the officers who arrested him placed him in rear handcuffs even though they knew he had

injured his right arm or shoulder.[15]  Plaintiff has not raised a triable issue on this claim.

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. . . [T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  Graham v. Connor, 490 U.S. 386, 394–95 (1989) (citations and internal quotation marks omitted).  To sustain a claim for excessive force, plaintiff must show that the use of force is "objectively sufficiently serious or harmful enough to be actionable."  United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999).  Plaintiff has not done so here.

The Court notes that plaintiff discusses this issue based on facts that are not supported by the record evidence.  The factual circumstance surrounding the rear-handcuffing claim is more limited than he asserts.

First, Sergeant Muia helped plaintiff to his feet by pulling on plaintiff's uninjured left arm before plaintiff was placed in handcuffs.[16]  Second, plaintiff was

---

[15]     In his briefing, plaintiff alternates between acknowledging that his cause of action is based on the rear handcuffing given his shoulder injury and making arguments regarding "tight" handcuffing.  (Pl.'s Mem. at 6-7.)  He also appears to transform the handcuffing issue from a Fourth Amendment excessive force claim to an Eighth Amendment claim for deliberate indifference to medical needs.  Plaintiff cannot raise new claims in opposition to a motion for summary judgment.

[16]     Although plaintiff asserts the officers pulled him up by his right arm, the Court does not disregard the incontrovertible record.  See Scott, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

handcuffed with two sets of handcuffs attached to each other, such that his arms were bent back far less than they would be had he been cuffed with one set of handcuffs.  The photographic evidence shows that plaintiff's arms were only bent back slightly and his hands rested a few inches behind the sides of his hips.  Third, although plaintiff complained of his arm being broken and being in pain both before and after he was arrested, there is no record evidence that <u>after</u> plaintiff was handcuffed, he told the officers that the double-linked cuffs <u>exacerbated</u> his arm pain or asked them to modify or remove his cuffs.  Fourth, it is undisputed that Officer Nunez took plaintiff to a hospital immediately after he was arrested and plaintiff's right hand was never cuffed again after he was triaged at the hospital. Finally, Officer Nunez is not a defendant in this action.  Based on these undisputed facts, and construing other facts in plaintiff's favor, the record evidence is insufficient to raise a triable issue.  Balancing "the nature and quality of the intrusion on [plaintiff's] Fourth Amendment interests" (causing additional pain to plaintiff who, prior to arrest, suffered a shoulder injury) "against the countervailing governmental interests at stake" (securing plaintiff, who was just arrested, for the purposes of bringing him to the hospital) leads to the conclusion that the officers' use of handcuffs was reasonable.  <u>See</u> <u>Graham</u>, 490 U.S. at 394–95.

In this case, the incontrovertible photographic evidence shows that plaintiff was not—as he claims in his deposition—rear-handcuffed with one set of handcuffs,

---

could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")

but rather with two sets of handcuffs extending across his back such that his hands rested near the side of his hips.  (See Fudim Decl. Ex. V.)  That the officers accommodated plaintiff's medical injury to his arm vitiates in favor of reasonableness, as it directly contradicts plaintiff's claim that they had "blatant disregard" for his existing injury.  See Sanchez v. Port Auth. of New York & New Jersey, 08 Civ. 1028 RRM, 2012 WL 1068078, at *9 (E.D.N.Y. Mar. 29, 2012). Instead, it unquestionably demonstrates that the officers were attempting to alleviate plaintiff's injury.

Furthermore, there is no record evidence that the officers who handcuffed plaintiff had reason to know that their accommodation led to an unreasonable exacerbation of plaintiff's pain.  While plaintiff alleges that he repeatedly told officers that he was in pain because of his broken arm—which he acknowledges he complained of even before he was handcuffed, (Pl.'s 56.1 ¶¶ 21-22), there is no record evidence that he told the officers that even the double linked handcuffs still caused him pain.  See Kalfus v. New York & Presbyterian Hosp., 476 F. App'x 877, 881 (2d Cir. 2012) ("Because the patrolmen had no reason to know that Kalfus's existing shoulder injury might be aggravated if his arms were pulled or he were handcuffed, the amount of force that they used to respond to Kalfus's resistance to arrest could not be deemed objectively 'unreasonable' by any reasonable jury." (emphasis in original)).

No reasonable trier of fact could find that the officers' conduct in this case was objectively unreasonable—especially given that in this action, the force is only

measured from the time the cuffs were placed on plaintiff's right wrist and the time he was handed over to Officer Nunez for transport to the hospital. The duration of any discomfort attributable to any defendant in this action is very short. It is uncontroverted that plaintiff was placed into an ambulance immediately after he was handcuffed. It is undisputed that Officer Nunez, a non-defendant, accompanied plaintiff to the hospital. Therefore, plaintiff's claim in this case is only cognizable to the extent that it is asserted against the officer or officers[17] who handcuffed him and for the period before he was put in the ambulance.

Finally, plaintiff has not adduced record evidence to show that the momentary pain he felt for that period of time can constitute a constitutional violation. While the Court assumes for the purposes of this motion that plaintiff did feel pain, plaintiff has not met his burden in establishing defendants caused him compensable injury. The fact that handcuffs "caused pain" is "generally insufficient to constitute excessive force." Gonzalez v. City of New York, 98 Civ. 3084 (ILG), 2000 WL 516682, at *4 (E.D.N.Y. Mar. 7, 2000); see also Perlleshi v. Cty. of Westchester, 98 Civ. 6927 (CM), 2000 WL 554294, at *6 (S.D.N.Y. Apr. 24, 2000). Plaintiff has adduced no evidence that whatever pain that was exacerbated by the accommodation of double-linked handcuffs—above and beyond what he would have

---

[17]    Although it is unclear which officer actually handcuffed plaintiff, it is undisputed that Sergeant Muia is the one who ordered that plaintiff be handcuffed. (NYPD Defs.' 56.1 ¶ 39.) While Aronowitz and Mraz may have been present during or participated in the handcuffing, there is also no evidence that Officer Shultz had any interaction with plaintiff prior to the second hospital visit later in the night.

felt from his broken arm even if not handcuffed—is sufficient to lead to rise to a constitutional violation.[18]

Moreover, even if plaintiff has supported a constitutional violation, the officers would nevertheless be entitled to qualified immunity. Qualified immunity attaches unless the right plaintiff claims was "so clearly established" that "it is obvious that no reasonably competent officer would have concluded" the amount of force used during plaintiff's arrest violated the law. Malley v. Briggs, 475 U.S. 335, 341 (1986); see also Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012). This is a high bar, as qualified immunity "gives ample room for mistaken judgments" and "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley, 475 U.S. at 335, 341.

It is simply not the case that "existing precedent placed the conclusion that [defendants] acted unreasonably in these circumstances 'beyond debate.'" Mullenix v. Luna, 136 S. Ct. 305, 209 (2015) (quoting Ashcroft v. Al-Kidd, 563 U.S. 731, 741 (2011)). Plaintiff has identified no existing precedent that using double-linked handcuffs to transport an arrestee with an arm injury to the hospital constitutes excessive force. Plaintiff's citations to cases regarding rear-handcuffing generally

---

[18]    The Court notes that plaintiff has attempted to introduce the affidavit of a purported expert witness, Dr. Jeffrey Shapiro. (Cacciato Decl. Ex. 15.) The Court will not accept such an affidavit or the opinions contained within. First, plaintiff apparently never timely disclosed Dr. Shapiro pursuant to the Federal Rules and instead introduced his affidavit for the first time in his (late) filing of exhibits to his Rule 56.1 statement. Second, plaintiff's own Rule 56.1 statement makes no reference to Dr. Shapiro. Third, the contents of the affidavit are apparently based on an assumption that plaintiff was rear-handcuffed with one set of handcuffs, which is untrue. The contents are also apparently based on a combination of effects of alleged conduct that are not a part of this case—such as the allegation that the officers hoisted plaintiff by both arms, and therefore do not constitute a properly formed expert opinion in this case.

are inapposite, since it is the officer's specific conduct in <u>this</u> case that is in question.[19]  Based on the record evidence, it is clear that the officers used two sets of handcuffs to attempt to minimize the impact of the cuffing on plaintiff's injury. That their efforts nevertheless resulted in some discomfort to plaintiff does not save plaintiff's claim, as it is not "obvious that no reasonably competent officer would have concluded" the amount of force used in handcuffing plaintiff by using an accommodation of double-linked cuffs violated the law.  <u>Malley</u>, 475 U.S. at 341.

### 3.   <u>Other Claims</u>

The Court notes that in their briefing on this motion, plaintiff and the NYPD and City defendants appear to address three claims pled as pendent state law claims as § 1983 claims:  false imprisonment and arrest, malicious prosecution, and failure to properly hire, train, and supervise.  The Court takes the claims as they are pled:  as state law tort claims.  Plaintiff's Second Amended Complaint clearly labels which claims are "pend[e]nt claims" and which are "constitutional claims;" he even labels all of the federal claims with the specific statute through which he aims to sue.  (<u>See</u> SAC at ¶12-32.)  Because plaintiff had clearly chosen to plead these claims as state law claims, and not pursuant to 42 U.S.C. § 1983, the Court treats them as they are pled because parties cannot assert new causes of action through later briefing.

---

[19]    There is absolutely no evidence of double-linked handcuffing in either case plaintiff cites. <u>See</u> <u>Rodriguez v. McGinnis</u>, No. 98-CV-6031CJS, 2004 WL 1145911, at *1 (W.D.N.Y. May 18, 2004); <u>Sarauer v. Frank</u>, No. 04-C-273-C, 2004 WL 2324981, at *1 (W.D. Wis. Oct. 6, 2004).  The Court has also conducted a search and has found none regarding using two sets of linked cuffs in response to an arm or shoulder injury.

Even if these claims were pled as § 1983 claims, they would still fail.

Defendant's false arrest claim is premised on the idea that the police should have arrested Shapiro instead. However, even if there were probable cause to arrest Shapiro, the existence of probable cause to arrest someone else does not defeat probable cause to arrest plaintiff. It is undisputed that Shapiro called 911 twice, stating that he had been assaulted by plaintiff. When the police arrived, Shapiro reiterated his statement that plaintiff had assaulted him. Shapiro also had a bloody nose and broken camera. This alone was enough to constitute probable cause to believe that plaintiff had indeed assaulted Shapiro, as Shapiro was the victim / eyewitness and had corroboration of the assault, namely through his injury. See Oliveira v. Mayer, 23 F.3d 642, 647 (2d Cir. 1994) ("Information about criminal activity provided by a single complainant can establish probable cause when that information is sufficiently reliable and corroborated."); Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) ("[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." (internal citations omitted)); Fox v. City of New York, No. 03 CIV. 2268(FM), 2004 WL 856299, at *6 (S.D.N.Y. Apr. 20, 2004); Moreno v. City of New Haven Dep't of Police Serv., 604 F. Supp. 2d 364, 373 (D. Conn. 2009).

Plaintiff's argument that the officers should not have arrested plaintiff based on Krebs's expression of surprise that plaintiff was arrested instead of Shapiro is

unsupported by the law.[20]  An officer is "is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Martinez, 202 F.3d at 635-36.  The ultimate arbiter of whether Shapiro's story holds up is the factfinder—or at least the district attorney.  Id. See also Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989).

In any event, the arresting officers are qualifiedly immune because it was objectively reasonable for them to believe that plaintiff had assaulted Shapiro, given the information they were provided at the scene.  "An arresting officer is entitled to qualified immunity" for a false arrest claim if, as it was here, "it was objectively reasonable for the officer to believe that probable cause existed." Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1997).  In addition, an officer is also qualifiedly immune if "officers of reasonable competence could disagree on whether the probable cause test was met." Id.  Here, both are certainly true.

Plaintiff also cannot support a claim for malicious prosecution against the officers.  A plaintiff alleging malicious prosecution must establish "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Manganiello v. City of New York, 612 F.3d 149, 160-61 (2d Cir. 2010) (internal citations omitted).  In this case, probable cause defeats the malicious prosecution

---

[20]    The Court is not convinced that Krebs's statements based on her observations would have worked against probable cause to arrest plaintiff.  While Krebs stated she subjectively believed Shapiro was the aggressor, she also testified that she saw plaintiff push Shapiro before Shapiro took any physical action and that plaintiff kicked Shapiro fifteen times.  (Krebs Dep. Tr. 34-37, 48-49.)

claim.  Johnson v. Constantellis, 221 Fed. App'x. 48, 50 (2d Cir. 2007).  Plaintiff has

also failed to proffer any facts demonstrating that any officer had an "active role in

the prosecution, such as giving advice and encouragement or importuning the

authorities to act," which is generally required for an officer to be liable for

malicious prosecution.  Bermudez v. City of New York, 790 F.3d 368, 377 (2d Cir.

2015).  Additionally, plaintiff has adduced no evidence suggesting actual malice on

the part of any officer.

Finally, plaintiff cannot support a Monell claim.  Monell requires that a

plaintiff must allege that a particular municipal policy or custom contributed to the

deprivation of his rights.  Monell v. Department of Social Services, 436 U.S. 658,

694 (1978); see also Davis v. City of New York, 75 F. App'x 827, 829 (2d Cir.2003)

(collecting cases).  Plaintiff cannot sue the City under § 1983 "for an injury inflicted

solely by its employees or agents," but rather must identify a "policy or custom,

whether made by its lawmakers or by those whose edicts or acts may fairly be said

to represent official policy," pursuant to which it inflicted the injury.  Monell, 438

U.S. at 694; see also Oklahoma v. Tuttle, 471 U.S. 808 (1985).  Thus, plaintiff must

both "prove the existence of a municipal policy or custom" and "establish a causal

connection—an affirmative link—between the policy and the deprivation of his

constitutional rights."  Vippolis v. Haverstraw, 768 F.2d 40, 44 (2d Cir.1985)

(internal quotation marks omitted).  Here, plaintiff merely alleges in conclusory

terms that the city failed to adequately select, train, and supervise its employees,

but does not identify any "policy or custom" that caused any deprivations of

constitutional rights.  (SAC ¶¶ 174-184.)  Thus, plaintiff's allegations fail as a

matter of law to support a <u>Monell</u> claim.

      B.     <u>State Law Claims</u>

Having dismissed all of plaintiff's federal claims, the Court now turns to his

state law claims against various defendants.  The Court dismisses all claims but the

negligence claim against Shapiro as unopposed or otherwise time-barred.  The

negligence claim against Shapiro cannot withstand scrutiny and fails as a matter of

law.

      1.     <u>State Law Claims against NYPD and City Defendants</u>

Plaintiff asserts a number of state law tort claims against the NYPD officer

defendants and the City of New York.  Although plaintiff appears to construe some

of them as federal claims, the Court has already discussed why they fail on that

basis.  As state law claims, they are unquestionably time-barred.  In New York, no

action may be "prosecuted against the city or any agency or an employee unless

notice of claim shall have been made and served upon the city" "within ninety days

after the claim arises."  N.Y. Gen. Mun. Law §§ 50–k(6); <u>Hardy v. New York City</u>

<u>Health & Hosps. Corp.</u>, 164 F.3d 789, 793-94 (2d Cir. 1999) ("Notice of claim

requirements are construed strictly.").  All the causes of action in this case arose on

September 15, 2011 or shortly thereafter.  Plaintiff filed his notice of claim on April

11, 2014.  Therefore, plaintiff's state law claims against the NYPD officers and the City of New York are untimely and hereby dismissed. [21]

2.     Malicious Prosecution Claim Against Shapiro and Burnett

Plaintiff asserts a number of state law intentional tort claims against defendants Shapiro and Burnett, but does not oppose summary judgment on nearly all of them.  Plaintiff does oppose summary judgment on the malicious prosecution claim against Shapiro.  This claim, like the other intentional tort claims against Shapiro and Burnett, is time-barred.  The statute of limitations for intentional torts in New York is one year.  N.Y.C.P.L.R. § 215(3).[22]  Because the events giving rise to those claims occurred on September 16, 2011 or shortly thereafter, any claims for intentional torts based on those claims must have been brought a year later.  However, plaintiff did not bring his claims until September 11, 2014, nearly three years later.  Therefore, this claim is dismissed as time-barred.  N.Y.C.P.L.R. § 215(3); see also Ross v. Louise Wise Servs., Inc., 868 N.E.2d 189, 197 (N.Y. 2007); Della Villa v. Constantino, 668 N.Y.S.2d 724, 725 (App. Div. 1998); Gallagher v. Directors Guild of Am., Inc., 533 N.Y.S.2d 863, 865 (App. Div. 1988).

---

[21]     The only such claims that were not already dismissed as unopposed are false imprisonment and false arrest, malicious prosecution, and failure to properly hire, train, and supervise.

[22]     Plaintiff is not entitled to the tolling provision of N.Y.C.P.L.R. § 215(8) because there is no record evidence that Shapiro and Burnett were subject to criminal action regarding the events in this case.  Even if plaintiff were subject to the tolling provision, his claim would have been time barred within a year of the imposition of sentence or other final disposition of any criminal action. Id.; N.Y. Crim. Proc. Law § 1.20(16).

3.   <u>Negligence Claim Against Shapiro</u>

Plaintiff also alleges negligence against Shapiro.  The first aspect of

plaintiff's negligence claim arises from the interaction in front of the Courthouse.

He alleges that Shapiro "grabb[ed] the [plaintiff] and prevent[ed] him from running

away, by causing his camera straps to become wrapped around the plaintiff's wrist."

(SAC ¶¶ 35-38.)  However, plaintiff has failed to raise a triable issue as to the

required elements of causation and injury.  (SAC ¶¶ 35-38.)  He has failed to proffer

a single fact supporting injury as to this initial altercation.

The second aspect of the negligence claim arises from the altercation in front

of Concord Market.  Plaintiff states in his Second Amended Complaint that Shapiro

intentionally assaulted plaintiff and that during the altercation, he (Shapiro) also

acted negligently by failing to secure his camera and losing his balance and falling

on top of plaintiff.[23]  (SAC ¶¶ 114-15.)  Plaintiff also asserts, however, that Shapiro

intentionally "use[d] a camera to hit" plaintiff.  (<u>See</u> Pl.'s Dep. Tr. 96.)  It is also

undisputed that Shapiro "tried to pull [plaintiff] down," and in the process of doing

so, fell on plaintiff.  (Pl.'s Dep. Tr. 97.)  The assertion of this intentional aggression

---

[23]     The Court notes that the negligence claim appears to be duplicative of the other two claims—
which are also dismissed—regarding the exact same alleged conduct.  Plaintiff alleges assault and
battery against Shapiro in Count II for striking him with his fists, feet, forearm, and camera, as well
as throwing plaintiff "down to the concrete twice."  (SAC ¶¶ 83-89.)  The very same conduct that
plaintiff alleges is negligent in Count VI is characterized as intentional assault in Count II.
Moreover, in Count V, plaintiff alleges negligent assault against Shapiro for "negligently inflict[ing]
bodily injuries . . . as a result of [his] negligent and unlawful physical contact with plaintiff."  (SAC
¶ 109.)  This appears to be the same conduct referred to in the negligence claim in Count VI.
        As discussed above, the two other claims are dismissed.  The assault and battery claim is
barred by the statute of limitations, and plaintiff has failed to oppose summary judgment on the
negligent assault claim.  Moreover, "no cause of action to recover damages for negligent assault
exists in New York."  <u>Wrase v. Bosco</u>, 706 N.Y.S.2d 434, 435 (App. Div. 2000).

removes the claim from the ambit of one for negligence.  See Dunn v. Brown, 690 N.Y.S.2d 81, 81 (App. Div. 1999) ("[A]llegations of intentional conduct cannot form the basis of a claim founded in negligence"); Cummins v. Schouten, 554 N.Y.S.2d 369 (App. Div. 1990).  The uncontroverted evidence demonstrates that any conduct relating to the camera and the bringing of plaintiff to the ground are intentional actions, and therefore cannot support a claim for negligence.  Under New York law, "once intentional offensive contact has been established, the actor is liable for assault and not negligence inasmuch as there is no such thing as a negligent assault. This is so even if the actor did not intend to cause injury" Cagliostro v. Madison Square Garden, Inc., 901 N.Y.S.2d 222, 223 (App. Div. 2010); Mazzaferro v. Albany Motel Enterprises, Inc., 515 N.Y.S.2d 631, 632–33 (App Div. 1987); Restatement (Second) of Torts § 16 (1965) ("If an act is done with the intention of inflicting upon another an offensive but not a harmful bodily contact, or of putting another in apprehension of either a harmful or offensive bodily contact, and such act causes a bodily contact to the other, the actor is liable to the other for a battery although the act was not done with the intention of bringing about the resulting bodily harm.").

In all events, an assault claim is time-barred.  N.Y. Gen. Mun. Law §§ 50–k(6).  Plaintiff cannot "avoid the running of the limitations period merely by attempting to couch the claim as one sounding in negligence." Tong v. Target, Inc., 922 N.Y.S.2d 458 (App. Div. 2011).  This claim is therefore dismissed.

IV.    CONCLUSION

For the reasons set forth above, defendants' motions for summary judgment are GRANTED.  The Clerk of Court is directed to terminate the motions at ECF Nos. 57, 59, 65, 96, and 98, and to terminate this action.


        SO ORDERED.

Dated:        New York, New York
              August 1, 2016

                                    _____
                                    KATHERINE B. FORREST
                                    United States District Judge